1      UNITED STATES JUDICIAL PANEL
       ON MULTIDISTRICT LITIGATION
2

3    _____

4    IN RE: BRANDYWINE COMMUNICATIONS
     TECHNOLOGIES, LLC, PATENT              MDL NO. 2462
5    LITIGATION
                                            Portland, ME
6    _____      July 25, 2013
                                             11:44 A.M.
7

8

9                  TRANSCRIPT OF HEARING

10

11   PRESIDING:

12       JUDGE JOHN G. HEYBURN, II, Chairman

13       JUDGE KATHRYN H. VRATIL

14       JUDGE MARJORIE O. RENDELL

15       JUDGE PAUL J. BARBADORO

16       JUDGE CHARLES R. BREYER

17       JUDGE LEWIS A. KAPLAN

18       JUDGE SARAH S. VANCE

19

20   Court Reporter:          Maureen Lockhart-Wagner, RMR
                              The Reporting Group
21                            177 Gray Road
                              Falmouth, ME  04105
22                            (207) 797-6040

23

24        Proceedings record by mechanical stenography
               Transcript produced by computer
25

APPEARANCES:

For Brandywine Communications Technologies, LLC:

        Timothy Devlin, Esq.
        Farney Daniels PC
        Wilmington, DE

For G4 Communications Corp., and Loretto
Communication Services, LLP:

        Timothy R. Shannon, Esq.
        Verrill Dana, LLP
        Portland, ME

For AT&T Corp., SBC Internet Services, Inc.,
Corporate West Computer Systems, Inc.,
MegaPath Inc., and IKANO Communications, Inc.:

        Daniel S. Young, Esq.
        Kilpatrick Townsend Stockton LLP
        Denver, CO

1          **PROCEEDINGS**

2          JUDGE HEYBURN:  Thank you very much.  Next is

3    Brandywine Communications Technologies Patent Litigation.  There

4    are three arguments.

5          Mr. Devlin, four minutes and two minutes of rebuttal;

6    is that right?

7          MR. DEVLIN:  That's right, your Honor.  Thank you.

8          May it please the Court, I'd like to focus on two

9    issues.  One has to do with the relationship of these parties in

10   these cases and the third parties that will be involved in

11   discovery and how that really makes this a particularly amenable

12   case for centralization.  The second issue is about the timing

13   of some of the existing cases because I think that came up in a

14   briefing, and I'd like to address a couple of points related to

15   that.

16          In terms of the relationship of the parties and the

17   general landscape of the case, this is a patent infringement

18   case.  There are six patents in play.  It's the same six patents

19   asserted in every case throughout the country.  There remain

20   about 35 defendants right now throughout the country in about 20

21   different courts throughout the country.  The vast majority --

22   as in many patent cases -- in fact, in more than most patent

23   cases, the issues of validity are essentially common to all

24   defendants.  Issues of claim structure are common to all

25   defendants.  And in this case many of the issues of infringement

are common to all of the defendants, partly because the patents
in the case relate to networking equipment protocols as they've
been applied against DSL technology, provision of internet over
DSL.  And because of that, there are a number of technical
standards that are in play according to the patents; and those
technical standards will be, of course, consistent from case to
case.  And in addition, this gets to the parties and third
parties.  All of the parties that are defendants in the cases
are suppliers of DSL.  They use, they operate, they sell
equipment to provide DSL services to residential and business
customers.  All of them purchase that equipment from a number of
third-party suppliers.  There are about 20 that we know of whose
equipment is relevant, and there are probably others that we'll
see as we get further into the discovery with more of the
defendants.  There may be ultimately 25 or 30 different
equipment suppliers, but we know of least about 20 whose
equipment is at play.  And they're a fixed universe of
suppliers.  Every one of those third-party suppliers is going to
be the subject of third-party discovery -- a set of subpoenas,
documents, depositions.  And that's something that should only
happen one time.  It makes no sense for every one of those
suppliers to be subject to separate rounds of depositions in 35
different lawsuits throughout the country.

          JUDGE BREYER:  So you're recommending it be in
Florida, Judge Honeywell?

1          MR. DEVLIN:  That's correct, yes.

2          JUDGE BREYER:  And Judge Honeywell has already had the

3    market hearings?

4          MR. DEVLIN:  That's correct, your Honor.

5          JUDGE BREYER:  So what about those people who haven't

6    participated in the market hearings?

7          MR. DEVLIN:  Well, the market -- the ruling is out

8    there.  So there are really two -- I guess, two different or

9    three different possibilities.  One is that you can have 20

10   different judges throughout the country having separate market

11   hearings and issuing potentially conflicting rulings, all of

12   which are in light of the existing market, whether they look to

13   it for guidance on not look to it for guidance for any

14   particular reason.  That's the worst case scenario.

15         JUDGE BARBADORO:  Are you suggesting Judge Honeywell,

16   frankly, because he made marketing rulings and you like those

17   rulings, and you want all the cases to go to him?  Is it wait

18   and see and get a good judge who gives good rulings on

19   marketing, and then move all of your cases to him on a

20   centralization motion?

21         MR. DEVLIN:  That's not the intention here, your

22   Honor.

23         JUDGE BARBADORO:  It's just a coincidence?

24         MR. DEVLIN:  It is a coincidence.  The impetus for the

25   timing of these motions was actually driven by discovery.  When

1   we started to send out subpoenas ourselves and have the

2   inventors receive subpoenas, it really drove home the issue of

3   the problem that the third parties face here.  Judge Honeywell

4   issued an order on claim construction, and that was both

5   positive for us in some ways and negative for us in some ways;

6   and I think the defendants would say that as well.  She does

7   have experience with the technology now, and has put a lot of

8   time and effort in, I think, to learning the different

9   technologies of the cases.  The hearing for the marketing was

10  approximately six or seven hours, so she put a lot of time --

11          JUDGE BARBADORO:  If we were to centralize but

12  inclined to send it somewhere else, do you have an alternative

13  suggestion?

14          MR. DEVLIN:  We've suggested -- some of the defendants

15  have suggested a central -- when I say central, I mean

16  geographically central location in the Northern District of

17  Texas.  We would have no objection to that.  It does make things

18  convenient.  A lot of defendants have suggested the Northern

19  District of California, in part because they expected the judge

20  in that case to also go through a market proceeding.  In the

21  midst of the briefing for this procedure --

22          JUDGE BREYER:  That's off.

23          MR. DEVLIN:  That's off.  The judge sua sponte

24  canceled that hearing, and so that case and the Florida case are

25  now stayed pending resolution of this.

 1         JUDGE BREYER:  Would sending it to Florida delay or

 2    impede the litigation now in the -- before Judge Honeywell?

 3         MR. DEVLIN:  I think the answer is yes.  We've stayed

 4    that case by agreement with the defendant there which is Century

 5    Tel, and we would expect that that case would sort of be reset

 6    on the schedule to accommodate issues of marketing and other

 7    things so that we can coordinate all of the discovery with the

 8    third parties.  So we had a trial date in that case.  I think it

 9    was February of next year.  And we understand that that will be

10    pushed back, and we think that is the appropriate thing to do in

11    light of the vast efficiencies that will take place if we can

12    centralize the cases.

13         JUDGE HEYBURN:  You mentioned earlier there were 20

14    third-party suppliers; is that right?

15         MR. DEVLIN:  That we know of now based on discovery

16    responses we've received.

17         JUDGE HEYBURN:  Are there lawsuits against those?

18         MR. DEVLIN:  No.  The suppliers -- the lawsuits are

19    pursuing against the providers of the services so companies

20    likes AT&T, Century Tel, MegaPath, these are all large or

21    regional DSL providers; and there are also some smaller or local

22    suppliers that are defendants.  So they're all businesses or

23    companies in the business of providing DSL services to

24    residential and business customers.  And the suppliers are -- I

25    guess -- I suppose we could have sued the suppliers in some

1    instances.  But some of the patents actually have to do with

2    interrelation between pieces of equipment between multiple

3    suppliers and the actions that the companies that provide DSL do

4    when they set up their systems in terms of how the different

5    lines are coordinated among different customers.  I could talk a

6    lot more about it, but you probably don't want to hear it.

7                JUDGE HEYBURN:  But legally, who is liable in the

8    first instance for the patent violations, what type of entity?

9                MR. DEVLIN:  So the -- the providers of the services

10   are direct infringers; and they are and should be liable.  Of

11   course, that's subject to us proving our case; but they are

12   direct infringers of the patents and would be liable.  There may

13   also be issues of inducement.  Most of the suppliers -- some of

14   them could be direct infringers of some of the patents.  Some of

15   them could be liable for inducement of some of the patents.  But

16   it's very complex when you look at the supplier universe and the

17   provider universe.

18               JUDGE HEYBURN:  But you've sued all of the providers.

19               MR. DEVLIN:  We've sued the providers, exactly.

20               JUDGE HEYBURN:  Thank you.

21               MR. DEVLIN:  Thank you, your Honor.

22               JUDGE HEYBURN:  Mr. Shannon.  Which group are you

23   representing?

24               MR. SHANNON:  Your Honor, Tim Shannon.  I'm counsel of

25   record for two of the defendants.

1              JUDGE HEYBURN:  In what category are they?

2              MR. SHANNON:  All opposing centralization.

3              JUDGE HEYBURN:  I know.  But are they direct -- are

4  they providers?

5              MR. SHANNON:  Providers, your Honor.  And I should

6  also say I am standing here as representative on behalf of 11

7  smaller service providers that have been accused of infringement

8  as well.

9              Attorney Young and I have divided our time here today

10  topically.  I will be addressing the topics concerning

11  convenience and justice based on 1407, and Mr. Young will

12  address common questions of fact and efficiency.  We'll both

13  touch upon the Northern District of California.

14             Transfer to the Middle District of Florida would not

15  be convenient for the parties.  None of us is headquartered

16  there.  None of us has operations there.  None of us has

17  witnesses or documents there.  That district found it had only a

18  passing interest in this dispute.  The only connection to that

19  state in that district is the fact that some handful of members

20  happen to live there.  But, of course, transfer --

21             JUDGE BARBADORO:  Does your view on centralization

22  change if we don't send it there?

23             MR. SHANNON:  Our view in the first instance is there

24  should be no centralization at all.  In the alternative, if

25  there is -- and I can report to the Panel we have an update on

1     that front -- the Northern District of California is preferable

2     to every single defendant that is appearing here today. So that

3     is an update contrary to counsel's representation a moment ago.

4     There will be one defendant that referenced alternative venues

5     centrally in the United States. That was American Network

6     Communications, Docket 65. Pursuant to your clerk's

7     instructions this morning, I communicated with them.

8          JUDGE BARBADORO: I would see why you would be

9     reluctant to support centralization to a district where the

10    judge has already construed the patents, maybe not completely

11    satisfied with those instructions. But apart from that, there

12    seem to be substantial efficiency benefits to the litigants here

13    to conduct these proceedings somewhere in a centralized basis.

14    Are you still opposed to centralization?

15         MR. SHANNON: Still opposed, your Honor. The

16    plaintiff could have and should have sued the equipment

17    manufacturers. We are all derivatively liable, if at all.

18         JUDGE BARBADORO: But assuming there is infringement,

19    you are liable and can be sued.

20         MR. SHANNON: If there is direct infringement by the

21    equipment manufacturers, they might arguably be derivatively

22    liable. But there is no connection to Florida, and each of our

23    cases is unique. We all use different constellations of

24    equipment and different bits of network equipment.

25         JUDGE BARBADORO: This could be vastly more expensive

1   for you guys to defend here if you're not centralized.

2            MR. SHANNON:  Your Honor, it's going to be -- I don't

3   think that the purpose of 1407 is to shuttle all of us in to be

4   processed for eventual capitulation, and I don't think the Panel

5   has ever said that.

6            JUDGE BREYER:  I don't think it has said that.

7            JUDGE HEYBURN:  You don't seem like the capitulating

8   type.

9            MR. SHANNON:  I want to touch upon this second point,

10  justice.  This Panel is charged with not only efficiency but

11  maintaining justice.  It would be unjust to deprive each of us

12  of the opportunity to appear before a judge and argue and

13  participate in marketing and claim construction.  To send this

14  to the Middle District is to deny us each a voice in that

15  process.  More broadly, particularly for the smaller defendants,

16  to herd us into a joint defense group is going to deprive us of

17  our voice.  It has taken us two-and-a-half hours of conference

18  calls, two-and-a-half hours to allocate these six minutes.

19  Smaller defendants will not be heard.  That's a problem, and it

20  is part of 1407 and we think this Panel's remit to consider the

21  justice to smaller defendants who are going to be essentially

22  herded along and not heard.

23            With respect to convenience finally --

24            JUDGE BARBADORO:  You think the plaintiffs will give

25  up if you're not centralized?  Is that the thinking?

1      MR. SHANNON:  Yes, your Honor.

2      JUDGE BARBADORO:  What it really is all about is you

3  think that the centralization gives them efficiency advantages

4  that they're more likely to sue a bunch of people; and -- and if

5  you don't centralize, you think they aren't going to -- it's not

6  worth it to them to litigate full bore, and that's the bet

7  that's being made?

8      MR. SHANNON:  Your Honor, you asked a straightforward

9  question, and I'll give you a straightforward answer.  Yes.  As

10  you weigh those two considerations though, our convenience,

11  their convenience, as the Panel considers those, consider that

12  not all inconvenience is created equal.  We have customers to

13  serve.  We have employees.  We have payroll to meet.  We provide

14  telephone service and internet access to real people, largely

15  rural and -- and under-served communities.  Litigation is a deep

16  distraction for us.  Its costs are fundamental to us.  It is

17  their business.  I would ask you to weigh that in evaluating

18  inconvenience.

19      JUDGE HEYBURN:  Who is Brandywine?  Do they own --

20  they bought these patents from somebody else?

21      MR. SHANNON:  The term of art in the field is patent

22  troll, your Honor.

23      JUDGE HEYBURN:  Or patent protector perhaps?

24      MR. SHANNON:  Various euphemisms have been drafted.

25      JUDGE KAPLAN:  Trolls have a treasured position in

1   Norse folklore, do they not?

2         MR. SHANNON:  They do, but they're not portrayed

3   prettily in that folklore.

4         JUDGE HEYBURN:  And so your argument is, well,

5   everybody's entitled to purchase a patent and then protect that

6   patent, and you're saying, yeah, they could do that, they just

7   go to the places where there is jurisdiction and they need to do

8   it?

9         MR. SHANNON:  If -- one of my defendants has three

10   employees, your Honor, three, Cactus International, three.  If

11   they want to sue a three-person company, by God, they should

12   come do it.

13         JUDGE BREYER:  You wouldn't be opposed to centralizing

14   all of the litigation here in Portland, right?

15         MR. SHANNON:  Personally?

16         JUDGE HEYBURN:  There seems like a history.  There

17   have been a lot of cases filed and a lot of cases settled.

18         MR. SHANNON:  Well, that's a very good point.  Mr.

19   Young will address that.  The cases are settling out.  The cases

20   are being resolved.  They're proceeding at pace.  If we all end

21   up in the Northern District of California, I think we all will

22   get bound up in one big gummy --

23         JUDGE HEYBURN:  It would be difficult to get there.

24         MR. SHANNON:  It would, and an inconvenience to the

25   smaller defendants.  I mean, these cases cost more to defend,

1    much more, than these patents are possibly worth, or as a

2    magnitude more than these patents are possibly worth.  So for me

3    to fly to California or participate in hours of telephone

4    conferences with Mr. Young, it's just -- that's an inefficiency

5    that, of course, the plaintiffs are counting on.

6              JUDGE HEYBURN:  Thank you very much.

7              Mr. Young.

8              MR. YOUNG:  Thank you, your Honor.  Dan Young,

9    representing the AT&T entities.

10             Mr. Shannon gave a very nice perspective on the

11   smaller defendants.  I'd like to give a perspective on the

12   larger defendants regarding the in litigation for over two

13   years.

14             What Brandywine is doing is using this Panel to

15   reconstruct their case where the court in Florida, Judge

16   Honeywell, looked at these cases initially filed and said they

17   have different facts, different circumstances, sua sponte

18   severed cases, and then transferred them out, us to California,

19   Verizon to New Jersey.  Now Brandywine has filed a whole bunch

20   of cases against little defendants throughout the country and is

21   trying then to say, oh, well, these have to be filed

22   consolidated, centralized.  Let's bring them back into Florida

23   to the same court who looked at the case initially and sent them

24   on their way to some more appropriate jurisdictions.  These

25   cases lack common facts, despite what Brandywine said earlier,

1    for basically these boilerplate complaints about the DSL

2    service.

3              JUDGE BARBADORO:  What do you think about the idea of

4    letting the Florida action stay on its own since the judge has

5    made some progress in resolving it and centralizing all of these

6    cases somewhere other than --

7              MR. YOUNG:  Well, your Honor, I can't speak about the

8    Florida case.  That's Century's counsel.  They're currently

9    litigating there.  We're currently litigating in Northern

10   California.  We've already had infringement contentions and

11   validity contentions.  We fully believe claim construction, and

12   we're ready to go.  And we've been litigating this for two

13   years.  We've already gone through the whole transfer process to

14   get out of Florida to the more appropriate jurisdiction where

15   the Court found that the parties --

16             JUDGE BARBADORO:  So if we were sort of suggesting the

17   idea of being centralized in your district and leaving the

18   Florida action in Florida, how do you feel about that?

19             MR. YOUNG:  Your Honor, to make sure I understand

20   this, you mean all of the actions other than the Century action?

21             JUDGE BARBADORO:  Right.

22             MR. YOUNG:  Well, I think there would be a couple of

23   issues with that.  Obviously, we prefer --

24             JUDGE BARBADORO:  But you like that better than

25   sending them all to Florida.

1           MR. YOUNG:  Yes, your Honor.  There's no question

2    that's true.

3           JUDGE BREYER:  What happened in Florida?  I never

4    quite understood what happened.

5           MR. YOUNG:  So, your Honor, when they formally filed,

6    Brandywine filed four actions against four defendants, AT&T,

7    Century, Verizon and EarthLink.  This is over two years ago.

8    The Court -- when we first got the action, the Court sua sponte

9    said these don't all belong in one case.  He severed the cases.

10   Then after it was severed, AT&T refiled a transfer motion to the

11   Northern District of California because that's where all of the

12   employees were, where all of the equipment was located.  And the

13   Court agreed that's the more appropriate jurisdiction.  And as

14   Mr. Shannon said, Florida only has a passing interest in this

15   case.  Verizon went to the District of New Jersey.  EarthLink

16   and Century stayed in Florida.  EarthLink is settled and Verizon

17   is settled.

18          And to your point earlier, they have filed now 70

19   additional cases.  Half of them have already settled, and this

20   is before a number of companies have even answered.  So the

21   cases are -- the trail cases are already getting resolved.  So

22   to take those remaining trail cases and to consolidate them back

23   into our action in the Northern District of California would be

24   inefficient because we're so far along in --

25          JUDGE BREYER:  So you're just saying leave everything

1    alone.

2              MR. YOUNG:  Yes, your Honor, because --

3              JUDGE BREYER:  Don't touch, do no harm.

4              MR. YOUNG:  That would be the just thing to do and the

5    efficient thing to do because the cases are already getting

6    resolved.

7              JUDGE BARBADORO:  It may be efficient for some but not

8    for others.  How many district courts are involved in these

9    cases?

10             MR. YOUNG:  Well, of the 35 remaining cases -- I

11   believe there are 35 remaining -- I believe there's

12   approximately 20 jurisdictions.

13             JUDGE BARBADORO:  So you want 20 district judges to

14   consider the same patents and spend the time that's required to

15   give a marketing ruling which, as you know, is one of the more

16   challenging, time-consuming rulings you can ask a district judge

17   to do; and you want 20 of them to do it.

18             MR. YOUNG:  Your Honor, my view is that I think this

19   is not going to happen.  I think if there is not consolidation,

20   the chances of having -- of the 35 remaining cases left, I think

21   you're going to be down to under 20 in a matter of weeks; and

22   you're going to be down to much fewer than that.  My guess is,

23   at the end of the day, you're going to have less than three or

24   four courts considering these claims, if even that.

25             JUDGE KAPLAN:  But if we sent everything except for

1    the Century case, for the sake of discussion, to Northern

2    California, there is no reason that the judge in Northern

3    California would have to put your case and the newly transferred

4    cases, which are at a much earlier stage of development, on the

5    same track.  Your case could go forward on the same timetable

6    that it otherwise would have gone forward.  Isn't that right?

7              MR. YOUNG:  Your Honor, as a practical matter, I would

8    say no.  And the reason for that is because we are literally

9    less than two weeks away from our claim construction hearing.

10   So it's already been fully briefed.  Everything is before the

11   Court.  We have already negotiated what terms are being

12   construed.  We have different terms than the Century case.  We

13   have different issues.  We have different products.  We have

14   determine terms that are being construed.  I think if we could

15   consolidate plaintiffs -- or I'm sorry -- defendants whose cases

16   are just in their infancy, some of them have not even been

17   answered yet, to get -- to make them get into the marketing

18   process would certainly delay our case substantially.

19             JUDGE KAPLAN:  Thank you.

20             JUDGE HEYBURN:  What is the relation -- the four

21   defendants -- the four initial defendants are those who have

22   presumably the greatest exposure if there is infringement.  Is

23   that fair to say?  I mean, other companies are smaller.

24             MR. YOUNG:  They're certainly the largest defendants,

25   yes, your Honor.

1          JUDGE HEYBURN:  What is the relationship, if you can
2     tell me, between the cases against your client, presumably the
3     other three and -- and then what is the relation between those
4     cases and the cases against the smaller defendants?  Are they
5     essentially derivative so that if you are liable, they are
6     liable, and there may be some action between the two; or are
7     they really separate?
8          MR. YOUNG:  Your Honor, you raised two points, if I
9     may address them both.  I think that they are fundamentally --
10    well, the original cases were against national carriers.
11         JUDGE HEYBURN:  Yes.
12         MR. YOUNG:  And now the new cases are against local --
13    mostly local providers and resellers.  So local providers have
14    different systems to carry their products locally.  And so they
15    use different equipment, different back-end processors than
16    obviously the national carriers.  They're fundamentally
17    different businesses, different business models.  Yes, they
18    provide DSL services, but how they do it and the mechanisms by
19    which they do it are fundamentally different.
20         The issue about -- - that Brandywine's counsel raised
21    about suppliers is interesting because, as they mentioned in the
22    motions, Brandywine has licensed RPX who has many -- they're a
23    patent consolidation entity.  They have many members.  Many of
24    these back-end providers are licensed.  So with each individual
25    defendant with different equipment, different processes, how

1    that license applies to their back-end is fundamentally

2    different.  You may have a defendant that says all of my

3    services are provided by licensed suppliers, I'm out, no claim

4    construction necessary, we're done.  Other defendants may say,

5    well, some of our, in this case, suppliers are licensed, some

6    are not.  It applies differently among all of the defendants.

7    So to lump them everybody together with all the different

8    back-end processors to have this license defense, as one

9    example, to be applied is going to -- is going to be very

10   difficult for a judge to do and prejudicial to the individual

11   defendants.  What they need is one judge that says, here is the

12   system, here is how the license applies to this, you're out, and

13   then what remains goes forward.  And what remains against each

14   defendant is going to have fundamental differences with respect

15   to claim construction because some patents may be out, some may

16   be there.  And every defendant is going to say, I don't care

17   about these set of terms, I care about these set.  But if one

18   judge --

19          JUDGE BREYER:  Is there any identity in the marketing

20   hearing in front of Judge Wilkins as already set and what

21   happened in Florida?

22          MR. YOUNG:  There were some overlapping terms and some

23   different terms.

24          JUDGE HEYBURN:  All right.  Thank you very much.

25          Mr. Devlin, you have two minutes.

1            MR. DEVLIN:  Thank you, your Honor.

2            With respect to those claim construction proceedings,

3    they were largely overlapping terms in the claim construction,

4    and a few differences, and that's with respect to many of the

5    defendants.

6            On this issue of justice and convenience, we heard on

7    the one hand that smaller defendants aren't going to get their

8    day in court, but at the same time, a lawyer for the smaller

9    defendants is here talking on behalf of all of them.  I don't

10   think there is an issue of the small defendants having their say

11   or their time in court.  That happens in many cases that involve

12   MDL's which involve individual parties in these mass tort cases

13   or products liability cases which you have heard a lot about

14   today.

15           It's not just about convenience for Brandywine or the

16   defendants.  It's about convenience for the third parties, and

17   there are many of them, the equipment suppliers and the seven

18   inventors on the patents collectively, and convenience for the

19   courts.  And even if the cases do compress through settlements

20   over time, there are still going to be many, many courts

21   involved.

22           In terms of the Florida case moving forward and ahead,

23   it's important to note that both in the Florida case and the

24   California case, the Century litigation and AT&T, they're both

25   stayed.  None of the third-party depositions have been taken,

1    none.  There has been no expert discovery taken.  In both cases

2    discovery is still open.  A first round of subpoenas went out,

3    and we got a handful of documents in from some of the suppliers

4    before it all shut down for this process.  But all of that

5    third-party discovery has really yet to be taken and will obtain

6    the benefits of centralization.

7         And lastly, on this license issue, even that -- that

8    involves issues of common law and fact.  No one will make the

9    argument that the providers that are defendants are direct

10   licensees.  The question is whether through their suppliers

11   they're licensed.  And so we have all of those same third-party

12   supplier issues.  And, of course, interpretation of the license

13   itself is going to be a common issue that one judge should look

14   at and one judge should apply, not have disparate rulings from

15   court to court throughout the country about the scope of a

16   license, the terms of a license, how it should be construed and

17   how it should be applied through all of these third parties.

18        This case is very similar to the TR Labs case which

19   this Panel ruled on just last year in which there were a far,

20   far smaller number of litigants, about the same number of

21   patents.  And there was a claim construction order that had just

22   been issued by one of the judges in the case, and this Panel

23   cited favorably to the fact that that judge had gone through a

24   claim construction process and consolidated the cases before

25   that same judge.

1        We think the same factors are in play here.  And even

2   if this Court is somehow concerned that we're trying to game the

3   system, we'll be happy to go to a different district so that we

4   can have consolidation of all of these cases together and obtain

5   the efficiencies of all of this discovery.  That is what our

6   real concern is here.

7        JUDGE HEYBURN:  Thank you very much.  Unless there are

8   questions, we'll take the matter under submission.

9                (The proceeding ended at 12:05 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        <u>CERTIFICATE</u>

2                I, Maureen Lockhart-Wagner, hereby certify that

3    the foregoing is a true and accurate transcript, to the best of

4    my skill and ability, from my stenographic notes of this

5    proceeding.

6

7

8                              _____

9                              Maureen Lockhart-Wagner, RMR-CM
                               Court Reporter
10                             August 1, 2013

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**0**

**04105** [1] - 1:21

**1**

**1** [1] - 24:10
**11** [1] - 9:6
**11:44** [1] - 1:6
**12:05** [1] - 23:9
**1407** [3] - 9:11, 11:3, 11:20
**177** [1] - 1:21

**2**

**20** [9] - 3:20, 4:12, 4:16, 5:9, 7:13, 17:12, 17:13, 17:17, 17:21
**2013** [2] - 1:6, 24:10
**207** [1] - 1:22
**2462** [1] - 1:4
**25** [2] - 1:6, 4:15

**3**

**30** [1] - 4:15
**35** [5] - 3:20, 4:22, 17:10, 17:11, 17:20

**6**

**65** [1] - 10:6

**7**

**70** [1] - 16:18
**797-6040** [1] - 1:22

**A**

**A.M** [1] - 1:6
**ability** [1] - 24:4
**access** [1] - 12:14
**accommodate** [1] - 7:6
**according** [1] - 4:5
**accurate** [1] - 24:3
**accused** [1] - 9:7
**action** [6] - 15:4, 15:18, 15:20, 16:8, 16:23, 19:6
**actions** [3] - 8:3, 15:20, 16:6
**addition** [1] - 4:7

**additional** [1] - 16:19
**address** [4] - 3:14, 9:12, 13:19, 19:9
**addressing** [1] - 9:10
**advantages** [1] - 12:3
**ago** [2] - 10:3, 16:7
**agreed** [1] - 16:13
**agreement** [1] - 7:4
**ahead** [1] - 21:22
**allocate** [1] - 11:18
**alone** [1] - 17:1
**alternative** [1] - 6:12, 9:24, 10:4
**amenable** [1] - 3:11
**American** [1] - 10:5
**answer** [2] - 7:3, 12:9
**answered** [2] - 16:20, 18:17
**apart** [1] - 11:12
**appear** [1] - 11:12
**APPEARANCES** [1] - 2:1
**appearing** [1] - 10:2
**applied** [4] - 4:3, 20:9, 22:17
**applies** [3] - 20:1, 20:6, 20:12
**apply** [1] - 22:14
**appropriate** [4] - 7:10, 14:24, 15:14, 16:13
**arguably** [1] - 10:21
**argue** [1] - 11:12
**argument** [2] - 13:4, 22:9
**arguments** [1] - 3:4
**art** [1] - 12:21
**asserted** [1] - 3:19
**assuming** [1] - 10:18
**AT&T** [6] - 2:8, 7:20, 14:9, 16:6, 16:10, 21:24
**Attorney** [1] - 9:9
**August** [1] - 24:10

**B**

**back-end** [4] - 19:15, 19:24, 20:1, 20:8
**BARBADORO** [16] - 1:15, 5:15, 5:23, 6:11, 9:21, 10:8, 10:18, 10:25, 11:24, 12:2, 15:3, 15:16, 15:21, 15:24, 17:7, 17:13
**based** [2] - 7:15, 9:11

**basis** [1] - 10:13
**behalf** [2] - 9:6, 21:9
**belong** [1] - 16:9
**benefits** [2] - 10:12, 22:6
**best** [1] - 24:3
**bet** [1] - 12:6
**better** [1] - 15:24
**between** [5] - 8:2, 19:2, 19:3, 19:6
**big** [1] - 13:22
**bits** [1] - 10:24
**boilerplate** [1] - 15:1
**bore** [1] - 12:6
**bought** [1] - 12:20
**bound** [1] - 13:22
**Brandywine** [9] - 2:2, 3:3, 12:19, 14:14, 14:19, 14:25, 16:6, 19:22, 21:15
**BRANDYWINE** [1] - 1:4
**Brandywine's** [1] - 19:20
**BREYER** [12] - 1:16, 4:24, 5:2, 5:5, 6:22, 7:1, 11:6, 13:13, 16:3, 16:25, 17:3, 20:19
**briefed** [1] - 18:10
**briefing** [2] - 3:14, 6:21
**bring** [1] - 14:22
**broadly** [1] - 11:15
**bunch** [2] - 12:4, 14:19
**business** [5] - 4:10, 7:23, 7:24, 12:17, 19:17
**businesses** [2] - 7:22, 19:17

**C**

**Cactus** [1] - 13:10
**California** [12] - 6:19, 9:13, 10:1, 13:21, 14:3, 14:18, 15:10, 16:11, 16:23, 18:2, 18:3, 21:24
**canceled** [1] - 6:24
**capitulating** [1] - 11:7
**capitulation** [1] - 11:4
**care** [2] - 20:16, 20:17
**carriers** [1] - 19:10, 19:16
**carry** [1] - 19:14

**case** [33] - 3:12, 3:17, 3:18, 3:19, 3:25, 4:2, 4:6, 4:7, 5:14, 6:20, 6:24, 7:4, 7:5, 7:8, 8:11, 14:15, 14:23, 15:8, 16:9, 16:15, 18:1, 18:3, 18:5, 18:12, 18:18, 20:5, 21:22, 21:23, 21:24, 22:18, 22:22
**cases** [43] - 3:10, 3:13, 3:22, 3:23, 4:8, 5:17, 5:19, 6:9, 7:12, 10:23, 13:17, 13:19, 13:25, 14:16, 14:18, 14:20, 14:25, 15:6, 16:9, 16:19, 16:21, 16:22, 17:5, 17:9, 17:10, 17:20, 18:4, 18:15, 19:2, 19:4, 19:10, 19:12, 21:11, 21:12, 21:13, 21:19, 22:1, 22:24, 23:4
**category** [1] - 9:1
**central** [3] - 6:15, 6:16
**centralization** [9] - 3:12, 5:20, 9:2, 9:21, 9:24, 10:9, 10:14, 12:3, 22:6
**centralize** [3] - 6:11, 7:12, 12:5
**centralized** [5] - 10:13, 11:1, 11:25, 14:22, 15:17
**centralizing** [2] - 13:13, 15:5
**centrally** [1] - 10:5
**Century** [8] - 7:4, 7:20, 15:20, 16:7, 16:16, 18:1, 18:12, 21:24
**Century's** [1] - 15:8
**certainly** [2] - 18:18, 18:24
**CERTIFICATE** [1] - 24:1
**certify** [1] - 24:2
**Chairman** [1] - 1:12
**challenging** [1] - 17:16
**chances** [1] - 17:20
**change** [1] - 9:22
**charged** [1] - 11:10
**CHARLES** [1] - 1:16
**circumstances** [1] - 14:17
**cited** [1] - 22:23
**claim** [11] - 3:24, 6:4, 11:13, 15:11, 18:9,

20:3, 20:15, 21:2, 21:3, 22:21, 22:24
**claims** [1] - 17:24
**clerk's** [1] - 10:6
**client** [1] - 19:2
**CM** [1] - 24:9
**CO** [1] - 2:11
**coincidence** [2] - 5:23, 5:24
**collectively** [1] - 21:18
**common** [7] - 3:23, 3:24, 4:1, 9:12, 14:25, 22:8, 22:13
**communicated** [1] - 10:7
**Communication** [1] - 2:5
**COMMUNICATIONS** [1] - 1:4
**Communications** [5] - 2:2, 2:5, 2:9, 3:3, 10:6
**communities** [1] - 12:15
**companies** [5] - 7:19, 7:23, 8:3, 16:20, 18:23
**company** [1] - 13:11
**complaints** [1] - 15:1
**completely** [1] - 10:10
**complex** [1] - 8:16
**compress** [1] - 21:19
**computer** [1] - 1:24
**Computer** [1] - 2:9
**concern** [1] - 23:6
**concerned** [1] - 23:2
**concerning** [1] - 9:10
**conduct** [1] - 10:13
**conference** [1] - 11:17
**conferences** [1] - 14:4
**conflicting** [1] - 5:11
**connection** [2] - 9:18, 10:22
**consider** [3] - 11:20, 12:11, 17:14
**considerations** [1] - 12:10
**considering** [1] - 17:24
**considers** [1] - 12:11
**consistent** [1] - 4:6
**consolidate** [2] - 16:22, 18:15
**consolidated** [2] - 14:22, 22:24

**consolidation** [3] - 17:19, 19:23, 23:4
**constellations** [1] - 10:23
**construction** [10] - 6:4, 11:13, 15:11, 18:9, 20:4, 20:15, 21:2, 21:3, 22:21, 22:24
**construed** [4] - 10:10, 18:12, 18:14, 22:16
**consuming** [1] - 17:16
**contentions** [2] - 15:10, 15:11
**contrary** [1] - 10:3
**convenience** [8] - 9:11, 11:23, 12:10, 12:11, 21:6, 21:15, 21:16, 21:18
**convenient** [2] - 6:18, 9:15
**coordinate** [1] - 7:7
**coordinated** [1] - 8:5
**Corp** [2] - 2:5, 2:8
**Corporate** [1] - 2:9
**correct** [2] - 5:1, 5:4
**cost** [1] - 13:25
**costs** [1] - 12:16
**counsel** [3] - 8:24, 15:8, 19:20
**counsel's** [1] - 10:3
**counting** [1] - 14:5
**country** [7] - 3:19, 3:20, 3:21, 4:23, 5:10, 14:20, 22:15
**couple** [2] - 3:14, 15:22
**course** [5] - 4:6, 8:11, 9:20, 14:5, 22:12
**Court** [9] - 1:20, 3:8, 15:15, 16:8, 16:13, 18:11, 23:2, 24:9
**court** [6] - 14:15, 14:23, 21:8, 21:11, 22:15
**courts** [5] - 3:21, 17:8, 17:24, 21:19, 21:20
**created** [1] - 12:12
**customers** [4] - 4:11, 7:24, 8:5, 12:12

### D

**Dan** [1] - 14:8
**Dana** [1] - 2:7

**Daniel** [1] - 2:10
**Daniels** [1] - 2:3
**date** [1] - 7:8
**DE** [1] - 2:4
**deep** [1] - 12:15
**defend** [2] - 11:1, 13:25
**defendant** [7] - 7:4, 10:2, 10:4, 19:25, 20:2, 20:14, 20:16
**defendants** [34] - 3:20, 3:24, 3:25, 4:1, 4:8, 4:15, 6:6, 6:14, 6:18, 7:22, 8:25, 11:15, 11:19, 11:21, 13:9, 13:25, 14:11, 14:12, 14:20, 16:6, 18:15, 18:21, 18:24, 19:4, 20:4, 20:6, 20:11, 21:5, 21:7, 21:9, 21:10, 21:16, 22:9
**defense** [2] - 11:16, 20:8
**delay** [2] - 7:1, 18:18
**Denver** [1] - 2:11
**deny** [1] - 11:14
**depositions** [3] - 4:20, 4:22, 21:25
**deprive** [2] - 11:11, 11:16
**derivative** [1] - 19:5
**derivatively** [2] - 10:17, 10:21
**despite** [1] - 14:25
**determine** [1] - 18:14
**development** [1] - 18:4
**Devlin** [3] - 2:3, 3:5, 20:25
**DEVLIN** [15] - 3:7, 5:1, 5:4, 5:7, 5:21, 5:24, 6:14, 6:23, 7:3, 7:15, 7:18, 8:9, 8:19, 8:21, 21:1
**differences** [2] - 20:14, 21:4
**different** [28] - 3:21, 4:15, 4:23, 5:8, 5:9, 5:10, 6:8, 8:4, 8:5, 10:23, 10:24, 14:17, 18:12, 18:13, 19:14, 19:15, 19:17, 19:19, 19:25, 20:2, 20:7, 20:23, 23:3
**differently** [1] - 20:6
**difficult** [2] - 13:23, 20:10
**direct** [6] - 8:10, 8:12, 8:14, 9:3, 10:20,
22:9
**discovery** [10] - 3:11, 4:14, 4:19, 5:25, 7:7, 7:15, 22:1, 22:2, 22:5, 23:5
**discussion** [1] - 18:1
**disparate** [1] - 22:14
**dispute** [1] - 9:18
**distraction** [1] - 12:16
**District** [10] - 6:16, 6:19, 9:13, 9:14, 10:1, 11:14, 13:21, 16:11, 16:15, 16:23
**district** [8] - 9:17, 9:19, 10:9, 15:17, 17:8, 17:13, 17:16, 23:3
**divided** [1] - 9:9
**Docket** [1] - 10:6
**documents** [3] - 4:20, 9:17, 22:3
**done** [1] - 20:4
**down** [3] - 17:21, 17:22, 22:4
**drafted** [1] - 12:24
**driven** [1] - 5:25
**drove** [1] - 6:2
**DSL** [9] - 4:3, 4:4, 4:9, 4:10, 7:21, 7:23, 8:3, 15:1, 19:18

### E

**EarthLink** [2] - 16:7, 16:15
**earthLink** [1] - 16:16
**efficiencies** [2] - 7:11, 23:5
**efficiency** [4] - 9:12, 10:12, 11:10, 12:3
**efficient** [2] - 17:5, 17:7
**effort** [1] - 6:8
**employees** [2] - 12:13, 13:10, 16:12
**end** [6] - 13:20, 17:23, 19:15, 19:24, 20:1, 20:8
**ended** [1] - 23:9
**entities** [1] - 14:9
**entitled** [1] - 13:5
**entity** [2] - 8:8, 19:23
**equal** [1] - 12:12
**equipment** [15] - 4:2, 4:10, 4:11, 4:13, 4:16, 4:17, 8:2, 10:16, 10:21, 10:24, 16:12, 19:15, 19:25, 21:17

**Esq** [3] - 2:3, 2:6, 2:10
**essentially** [3] - 3:23, 11:21, 19:5
**euphemisms** [1] - 12:24
**evaluating** [1] - 12:17
**eventual** [1] - 11:4
**exactly** [1] - 8:19
**example** [1] - 20:9
**except** [1] - 17:25
**existing** [2] - 3:13, 5:12
**expect** [1] - 7:5
**expected** [1] - 6:19
**expensive** [1] - 10:25
**experience** [1] - 6:7
**expert** [1] - 22:1
**exposure** [1] - 18:22

### F

**face** [1] - 6:3
**fact** [5] - 3:22, 9:12, 9:19, 22:8, 22:23
**factors** [1] - 23:1
**facts** [2] - 14:17, 14:25
**fair** [1] - 18:23
**Falmouth** [1] - 1:21
**far** [3] - 16:24, 22:19, 22:20
**Farney** [1] - 2:3
**favorably** [1] - 22:23
**February** [1] - 7:9
**few** [1] - 21:4
**fewer** [1] - 17:22
**field** [1] - 12:21
**filed** [7] - 13:17, 14:16, 14:19, 14:21, 16:5, 16:6, 16:18
**finally** [1] - 11:23
**first** [4] - 8:8, 9:23, 16:8, 22:2
**fixed** [1] - 4:17
**Florida** [19] - 4:25, 6:24, 7:1, 9:14, 10:22, 14:15, 14:22, 15:4, 15:8, 15:14, 15:18, 15:25, 16:3, 16:14, 16:16, 20:21, 21:22, 21:23
**fly** [1] - 14:3
**focus** [1] - 3:8
**folklore** [2] - 13:1, 13:3
**foregoing** [1] - 24:3

**formally** [1] - 16:5
**forward** [4] - 18:5, 18:6, 20:13, 21:22
**four** [6] - 3:5, 16:6, 16:24, 18:20, 18:21
**frankly** [1] - 5:16
**front** [2] - 10:1, 20:20
**full** [1] - 12:6
**fully** [2] - 15:11, 18:10
**fundamental** [2] - 12:16, 20:14
**fundamentally** [4] - 19:9, 19:16, 19:19, 20:1

### G

**G4** [1] - 2:5
**game** [1] - 23:2
**general** [1] - 3:17
**geographically** [1] - 6:16
**God** [1] - 13:11
**Gray** [1] - 1:21
**greatest** [1] - 18:22
**group** [2] - 8:22, 11:16
**Group** [1] - 1:20
**guess** [3] - 5:8, 7:25, 17:22
**guidance** [2] - 5:13
**gummy** [1] - 13:22
**guys** [1] - 11:1

### H

**half** [3] - 11:17, 11:18, 16:19
**hand** [1] - 21:7
**handful** [2] - 9:19, 22:3
**happy** [1] - 23:3
**harm** [1] - 17:3
**headquartered** [1] - 9:15
**hear** [1] - 8:6
**heard** [4] - 11:19, 11:22, 21:6, 21:13
**hearing** [4] - 6:9, 6:24, 18:9, 20:20
**HEARING** [1] - 1:9
**hearings** [3] - 5:3, 5:6, 5:11
**herd** [1] - 11:16
**herded** [1] - 11:22
**hereby** [1] - 24:2
**HEYBURN** [22]

1:12, 3:2, 7:13, 7:17, 8:7, 8:18, 8:20, 8:22, 9:1, 9:3, 11:7, 12:19, 12:23, 13:4, 13:16, 13:23, 14:6, 18:20, 19:1, 19:11, 20:24, 23:7

**history** [1] - 13:16
**home** [1] - 6:2
**Honeywell** [6] - 4:25, 5:2, 5:15, 6:3, 7:2, 14:16
**Honor** [23] - 3:7, 5:4, 5:22, 8:21, 8:24, 9:5, 10:15, 11:2, 12:1, 12:8, 12:22, 13:10, 14:8, 15:7, 15:19, 16:1, 16:5, 17:2, 17:18, 18:7, 18:25, 19:8, 21:1
**hours** [4] - 6:10, 11:17, 11:18, 14:3

## I

**idea** [2] - 15:3, 15:17
**identity** [1] - 20:19
**II** [1] - 1:12
**IKANO** [1] - 2:9
**impede** [1] - 7:2
**impetus** [1] - 5:24
**important** [1] - 21:23
**IN** [1] - 1:4
**Inc** [4] - 2:8, 2:9, 2:9
**inclined** [1] - 6:12
**inconvenience** [3] - 12:12, 12:18, 13:24
**individual** [3] - 19:24, 20:10, 21:12
**inducement** [2] - 8:13, 8:15
**inefficiency** [1] - 14:4
**inefficient** [1] - 16:24
**infancy** [1] - 18:16
**infringement** [7] - 3:17, 3:25, 9:7, 10:18, 10:20, 15:10, 18:22
**infringers** [3] - 8:10, 8:12, 8:14
**initial** [1] - 18:21
**instance** [2] - 8:8, 9:23
**instances** [1] - 8:1
**instructions** [2] - 10:7, 10:11
**intention** [1] - 5:21
**interest** [2] - 9:18, 16:14

**interesting** [1] - 19:21
**International** [1] - 13:10
**internet** [2] - 4:3, 12:14
**Internet** [1] - 2:8
**interpretation** [1] - 22:12
**interrelation** [1] - 8:2
**inventors** [2] - 6:2, 21:18
**involve** [2] - 21:11, 21:12
**involved** [3] - 3:10, 17:8, 21:21
**involves** [1] - 22:8
**issue** [7] - 3:12, 6:2, 19:20, 21:6, 21:10, 22:7, 22:13
**issued** [2] - 6:4, 22:22
**issues** [10] - 3:9, 3:23, 3:24, 3:25, 7:6, 8:13, 15:23, 18:13, 22:8, 22:12
**issuing** [1] - 5:11
**itself** [1] - 22:13

## J

**Jersey** [2] - 14:19, 16:15
**JOHN** [1] - 1:12
**joint** [1] - 11:16
**JUDGE** [57] - 1:12, 1:13, 1:14, 1:15, 1:16, 1:17, 1:18, 3:2, 4:24, 5:2, 5:5, 5:15, 5:23, 6:11, 6:22, 7:1, 7:13, 7:17, 8:7, 8:18, 8:20, 8:22, 9:1, 9:3, 9:21, 10:8, 10:18, 10:25, 11:6, 11:7, 11:24, 12:2, 12:19, 12:23, 12:25, 13:4, 13:13, 13:16, 13:23, 14:6, 15:3, 15:16, 15:21, 15:24, 16:3, 16:25, 17:3, 17:7, 17:13, 17:25, 18:19, 18:20, 19:1, 19:11, 20:19, 20:24, 23:7
**Judge** [6] - 4:25, 5:2, 5:15, 7:2, 14:15, 20:20
**judge** [16] - 5:18, 6:3, 6:19, 6:23, 10:10, 11:12, 15:4, 17:16,

18:2, 20:10, 20:11, 20:18, 22:13, 22:14, 22:23, 22:25
**judges** [3] - 5:10, 17:13, 22:22
**JUDICIAL** [1] - 1:1
**July** [1] - 1:6
**jurisdiction** [3] - 13:7, 15:14, 16:13
**jurisdictions** [2] - 14:24, 17:12
**justice** [5] - 9:11, 11:10, 11:11, 11:21, 21:6

## K

**KAPLAN** [4] - 1:17, 12:25, 17:25, 18:19
**KATHRYN** [1] - 1:13
**Kilpatrick** [1] - 2:11

## L

**Labs** [1] - 22:18
**lack** [1] - 14:25
**landscape** [1] - 3:17
**large** [1] - 7:20
**largely** [2] - 12:14, 21:3
**larger** [1] - 14:12
**largest** [1] - 18:24
**last** [1] - 22:19
**lastly** [1] - 22:7
**law** [1] - 22:8
**lawsuits** [3] - 4:23, 7:17, 7:18
**lawyer** [1] - 21:8
**learning** [1] - 6:8
**least** [1] - 4:16
**leave** [1] - 16:25
**leaving** [1] - 15:17
**left** [1] - 17:20
**legally** [1] - 8:7
**less** [2] - 17:23, 18:9
**letting** [1] - 15:4
**LEWIS** [1] - 1:17
**liability** [1] - 21:13
**liable** [9] - 8:7, 8:10, 8:12, 8:15, 10:17, 10:19, 10:22, 19:5, 19:6
**license** [7] - 20:1, 20:8, 20:12, 22:7, 22:12, 22:16
**licensed** [5] - 19:22, 19:24, 20:3, 20:5, 22:11

**licensees** [1] - 22:10
**light** [2] - 5:12, 7:11
**likely** [1] - 12:4
**lines** [1] - 8:5
**literally** [1] - 18:8
**litigants** [2] - 10:12, 22:20
**litigate** [1] - 12:6
**litigating** [3] - 15:9, 15:12
**LITIGATION** [2] - 1:1, 1:5
**Litigation** [1] - 3:3
**litigation** [5] - 7:2, 12:15, 13:14, 14:12, 21:24
**live** [1] - 9:20
**LLC** [2] - 1:4, 2:2
**LLP** [3] - 2:5, 2:7, 2:11
**local** [4] - 7:21, 19:12, 19:13
**locally** [1] - 19:14
**located** [1] - 16:12
**location** [1] - 6:16
**Lockhart** [3] - 1:20, 24:2, 24:9
**Lockhart-Wagner** [3] - 1:20, 24:2, 24:9
**look** [4] - 5:12, 5:13, 8:16, 22:13
**looked** [2] - 14:16, 14:23
**Loretto** [1] - 2:5
**lump** [1] - 20:7

## M

**magnitude** [1] - 14:2
**maintaining** [1] - 11:11
**majority** [1] - 3:21
**manufacturers** [2] - 10:17, 10:21
**MARJORIE** [1] - 1:14
**market** [6] - 5:3, 5:6, 5:7, 5:10, 5:12, 6:20
**marketing** [8] - 5:16, 5:19, 6:9, 7:6, 11:13, 17:15, 18:17, 20:19
**mass** [1] - 21:12
**matter** [3] - 17:21, 18:7, 23:8
**Maureen** [3] - 1:20, 24:2, 24:9
**MDL** [1] - 1:4
**MDL's** [1] - 21:12
**ME** [3] - 1:5, 1:21, 2:7

**mean** [4] - 6:15, 13:25, 15:20, 18:23
**mechanical** [1] - 1:24
**mechanisms** [1] - 19:18
**meet** [1] - 12:13
**MegaPath** [2] - 2:9, 7:20
**members** [2] - 9:19, 19:23
**mentioned** [2] - 7:13, 19:21
**Middle** [2] - 9:14, 11:14
**midst** [1] - 6:21
**might** [1] - 10:21
**minutes** [2] - 3:5, 11:18, 20:25
**models** [1] - 19:17
**moment** [1] - 10:3
**morning** [1] - 10:7
**most** [2] - 3:22, 8:13
**mostly** [1] - 19:13
**motion** [2] - 5:20, 16:10
**motions** [2] - 5:25, 19:22
**move** [1] - 5:19
**moving** [1] - 21:22
**MR** [46] - 3:7, 5:1, 5:4, 5:7, 5:21, 5:24, 6:14, 6:23, 7:3, 7:15, 7:18, 8:9, 8:19, 8:21, 8:24, 9:2, 9:5, 9:23, 10:15, 10:20, 11:2, 11:9, 12:1, 12:8, 12:21, 12:24, 13:2, 13:9, 13:15, 13:18, 13:24, 14:8, 15:19, 15:22, 16:1, 16:5, 17:2, 17:4, 17:10, 17:18, 18:7, 18:24, 19:8, 19:12, 20:22, 21:1
**MULTIDISTRICT** [1] - 1:1
**multiple** [1] - 8:2

## N

**national** [2] - 19:10, 19:16
**necessary** [1] - 20:4
**need** [3] - 13:7, 20:11
**negative** [1] - 6:5
**negotiated** [1] - 18:11

Network [1] - 10:5
network [1] - 10:24
networking [1] - 4:2
never [1] - 16:3
new [1] - 19:12
New [2] - 14:19, 16:15
newly [1] - 18:3
next [2] - 3:2, 7:9
nice [1] - 14:10
NO [1] - 1:4
none [5] - 9:15, 9:16, 21:25, 22:1
Norse [1] - 13:1
Northern [10] - 6:16, 6:18, 9:13, 10:1, 13:21, 15:9, 16:11, 16:23, 18:1, 18:2
note [1] - 21:23
notes [1] - 24:4
number [5] - 4:4, 4:11, 16:20, 22:20

**O**

objection [1] - 6:17
obtain [2] - 22:5, 23:4
Obviously [1] - 15:23
obviously [1] - 19:16
OF [1] - 1:9
ON [1] - 1:1
one [18] - 3:9, 4:18, 4:21, 5:9, 10:4, 13:9, 13:22, 16:9, 17:15, 20:8, 20:11, 20:7, 21:7, 22:8, 22:13, 22:14, 22:22
open [1] - 22:2
operate [1] - 4:9
operations [1] - 9:16
opportunity [1] - 11:12
opposed [3] - 10:14, 10:15, 13:13
opposing [1] - 9:2
order [2] - 6:4, 22:21
original [1] - 19:10
otherwise [1] - 18:6
ourselves [1] - 6:1
overlapping [2] - 20:22, 21:3
own [2] - 12:19, 15:4

**P**

P.M [1] - 23:9

pace [1] - 13:20
PANEL [1] - 1:1
Panel [7] - 9:25, 11:4, 11:10, 12:11, 14:14, 22:19, 22:22
Panel's [1] - 11:20
part [2] - 6:19, 11:20
participate [2] - 11:13, 14:3
participated [1] - 5:6
particular [1] - 5:14
particularly [2] - 3:11, 11:15
parties [13] - 3:9, 3:10, 3:16, 4:7, 4:8, 6:3, 7:8, 9:15, 15:15, 21:12, 21:16, 22:17
partly [1] - 4:1
party [7] - 4:12, 4:18, 4:19, 7:14, 21:25, 22:5, 22:11
passing [2] - 9:18, 16:14
patent [9] - 3:17, 3:22, 8:8, 12:21, 12:23, 13:5, 13:6, 19:23
PATENT [1] - 1:4
Patent [1] - 3:3
patents [16] - 3:18, 4:1, 4:5, 8:1, 8:12, 8:14, 8:15, 10:10, 12:20, 14:1, 14:2, 17:14, 20:15, 21:18, 22:21
PAUL [1] - 1:15
payroll [1] - 12:13
PC [1] - 2:3
pending [1] - 6:25
people [3] - 5:5, 12:4, 12:14
perhaps [1] - 12:23
person [1] - 13:11
personally [1] - 13:15
perspective [2] - 14:10, 14:11
pieces [1] - 8:2
place [1] - 7:11
places [1] - 13:7
plaintiff [1] - 10:16
plaintiffs [3] - 11:24, 14:5, 18:15
play [4] - 3:18, 4:5, 4:17, 23:1
point [1] - 11:9, 13:18, 16:18
points [2] - 3:14, 19:8
Portland [3] - 1:5,

2:7, 13:14
portrayed [1] - 13:2
position [1] - 12:25
positive [1] - 6:5
possibilities [1] - 5:9
possibly [2] - 14:1, 14:2
potentially [1] - 5:11
practical [1] - 18:7
prefer [1] - 15:23
preferable [1] - 10:1
prejudicial [1] - 20:10
PRESIDING [1] - 1:11
presumably [1] - 18:22, 19:2
prettily [1] - 13:3
problem [2] - 6:3, 11:19
procedure [1] - 6:21
proceeding [4] - 6:20, 13:20, 23:9, 24:5
PROCEEDINGS [1] - 3:1
proceedings [2] - 10:13, 21:2
Proceedings [1] - 1:24
process [5] - 11:15, 15:13, 18:18, 22:4, 22:24
processed [1] - 11:4
processes [1] - 19:25
processors [2] - 19:15, 20:8
produced [1] - 1:24
products [3] - 18:13, 19:14, 21:13
progress [1] - 15:5
protect [1] - 13:5
protector [1] - 12:23
protocols [1] - 4:2
provide [4] - 4:10, 8:3, 12:13, 19:18
provided [1] - 20:3
provider [1] - 8:17
providers [12] - 7:19, 7:21, 8:9, 8:18, 8:19, 9:4, 9:5, 9:7, 19:13, 19:24, 22:9
providing [1] - 7:23
proving [1] - 8:11
provision [1] - 4:3
purchase [2] - 4:11, 13:5
purpose [1] - 11:3
pursuant [1] - 10:6

pursuing [1] - 7:19
pushed [1] - 7:10
put [3] - 6:7, 6:10, 18:3

**Q**

questions [2] - 9:12, 23:8
quite [1] - 16:4

**R**

raised [2] - 19:8, 19:20
RE [1] - 1:4
ready [1] - 15:12
real [2] - 12:14, 23:6
really [6] - 3:11, 5:8, 6:2, 12:2, 19:7, 22:5
reason [3] - 5:14, 18:2, 18:8
rebuttal [1] - 3:5
receive [1] - 6:2
received [1] - 7:16
recommending [1] - 4:24
reconstruct [1] - 14:15
record [1] - 1:24, 8:25
referenced [1] - 10:4
refiled [1] - 16:10
regarding [1] - 14:12
regional [1] - 7:21
relate [1] - 4:2
related [1] - 3:14
relation [2] - 18:20, 19:3
relationship [3] - 3:9, 3:16, 19:1
relevant [1] - 4:13
reluctant [1] - 10:9
remain [1] - 3:19
remaining [4] - 16:22, 17:10, 17:11, 17:20
remains [2] - 20:13
remit [1] - 11:20
RENDELL [1] - 1:14
report [1] - 9:25
Reporter [2] - 1:20, 24:9
Reporting [1] - 1:20
representation [1] - 10:3
representative [1] - 9:6

representing [2] - 8:23, 14:9
required [1] - 17:14
resellers [1] - 19:13
reset [1] - 7:5
residential [2] - 4:10, 7:24
resolution [1] - 6:25
resolved [3] - 13:20, 16:21, 17:6
resolving [1] - 15:5
respect [4] - 11:23, 20:14, 21:2, 21:4
responses [1] - 7:16
RMR [1] - 1:20, 24:9
RMR-CM [1] - 24:9
Road [1] - 1:21
round [1] - 22:2
rounds [1] - 4:22
RPX [1] - 19:22
ruled [1] - 22:19
ruling [3] - 5:7, 17:15
rulings [6] - 5:11, 5:16, 5:17, 5:18, 17:16, 22:14
rural [1] - 12:15

**S**

sake [1] - 18:1
SARAH [1] - 1:18
satisfied [1] - 10:11
SBC [1] - 2:8
scenario [1] - 5:14
schedule [1] - 7:6
scope [1] - 22:15
second [2] - 3:12, 11:9
see [3] - 4:14, 5:18, 10:8
seem [1] - 10:12, 11:7
sell [1] - 4:9
send [4] - 6:1, 6:12, 9:22, 11:13
sending [1] - 7:1, 15:25
sense [1] - 4:21
sent [2] - 14:23, 17:25
separate [3] - 4:22, 5:10, 19:7
serve [1] - 12:13
served [1] - 12:15
service [3] - 9:7, 12:14, 15:2
services [6] - 4:10, 7:19, 7:23, 8:9, 19:18, 20:3

**Services** [2] - 2:5, 2:8
**set** [5] - 4:19, 8:4, 20:17, 20:20
**settled** [4] - 13:17, 16:16, 16:17, 16:19
**settlements** [1] - 21:19
**settling** [1] - 13:19
**seven** [2] - 6:10, 21:17
**severed** [3] - 14:18, 16:9, 16:10
**SHANNON** [17] - 8:24, 9:2, 9:5, 9:23, 10:15, 10:20, 11:2, 11:9, 12:1, 12:8, 12:21, 12:24, 13:2, 13:9, 13:15, 13:18, 13:24
**Shannon** [5] - 2:6, 8:22, 8:24, 14:10, 16:14
**shut** [1] - 22:4
**shuttle** [1] - 11:3
**similar** [1] - 22:18
**single** [1] - 10:2
**six** [4] - 3:18, 6:10, 11:18
**skill** [1] - 24:4
**small** [1] - 21:10
**smaller** [12] - 7:21, 9:7, 11:15, 11:19, 11:21, 13:25, 14:11, 18:23, 19:4, 21:7, 21:8, 22:20
**somewhere** [3] - 6:12, 10:13, 15:6
**sorry** [1] - 18:15
**sort** [2] - 7:5, 15:16
**spend** [1] - 17:14
**sponte** [3] - 6:23, 14:17, 16:8
**stage** [1] - 18:4
**standards** [2] - 4:5, 4:6
**standing** [1] - 9:6
**started** [1] - 6:1
**state** [1] - 9:19
**STATES** [1] - 1:1
**States** [1] - 10:5
**stay** [1] - 15:4
**stayed** [4] - 6:25, 7:3, 16:16, 21:25
**stenographic** [1] - 24:4
**stenography** [1] - 1:24
**still** [4] - 10:14, 10:15, 21:20, 22:2

**Stockton** [1] - 2:11
**straightforward** [2] - 12:8, 12:9
**structure** [1] - 3:24
**sua** [3] - 6:23, 14:17, 16:8
**subject** [3] - 4:19, 4:22, 8:11
**submission** [1] - 23:8
**subpoenas** [4] - 4:19, 6:1, 6:2, 22:2
**substantial** [1] - 10:12
**substantially** [1] - 18:18
**sue** [2] - 12:4, 13:11
**sued** [5] - 7:25, 8:18, 8:19, 10:16, 10:19
**suggested** [3] - 6:14, 6:15, 6:18
**suggesting** [2] - 5:15, 15:16
**suggestion** [1] - 6:13
**supplier** [2] - 8:16, 22:12
**suppliers** [19] - 4:9, 4:12, 4:16, 4:18, 4:22, 7:14, 7:18, 7:22, 7:24, 7:25, 8:3, 8:13, 19:21, 20:3, 20:5, 21:17, 22:3, 22:10
**support** [1] - 10:9
**suppose** [1] - 7:25
**system** [2] - 20:12, 23:3
**Systems** [1] - 2:9
**systems** [2] - 8:4, 19:14

## T

**technical** [2] - 4:4, 4:6
**technologies** [1] - 6:9
**Technologies** [2] - 2:2, 3:3
**TECHNOLOGIES** [1] - 1:4
**technology** [2] - 4:3, 6:7
**Tel** [2] - 7:5, 7:20
**telephone** [2] - 12:14, 14:3
**term** [1] - 12:21
**terms** [11] - 3:16, 8:4, 18:11, 18:12, 18:14, 20:17, 20:22, 20:23,

21:3, 21:22, 22:16
**Texas** [1] - 6:17
**they've** [1] - 4:2
**thinking** [1] - 11:25
**third** [13] - 3:10, 4:7, 4:12, 4:18, 4:19, 6:3, 7:8, 7:14, 21:16, 21:25, 22:5, 22:11, 22:17
**third-party** [7] - 4:12, 4:18, 4:19, 7:14, 21:25, 22:5, 22:11
**three** [8] - 3:4, 5:9, 13:9, 13:10, 13:11, 17:23, 19:3
**three-person** [1] - 13:11
**throughout** [7] - 3:19, 3:20, 3:21, 4:23, 5:10, 14:20, 22:15
**Tim** [1] - 8:24
**time-consuming** [1] - 17:16
**timetable** [1] - 18:5
**timing** [2] - 3:12, 5:25
**Timothy** [2] - 2:3, 2:6
**today** [3] - 9:9, 10:2, 21:14
**together** [2] - 20:7, 23:4
**topically** [1] - 9:10
**topics** [1] - 9:10
**tort** [1] - 21:12
**touch** [3] - 9:13, 11:9, 17:3
**Townsend** [1] - 2:11
**TR** [1] - 22:18
**track** [1] - 18:5
**trail** [2] - 16:21, 16:22
**transcript** [1] - 24:3
**TRANSCRIPT** [1] - 1:9
**Transcript** [1] - 1:24
**transfer** [4] - 9:14, 9:20, 15:13, 16:10
**transferred** [2] - 14:18, 18:3
**treasured** [1] - 12:25
**trial** [1] - 7:8
**troll** [1] - 12:22
**Trolls** [1] - 12:25
**true** [2] - 16:2, 24:3
**trying** [2] - 14:21, 23:2
**two** [15] - 3:5, 3:8, 5:8, 8:25, 11:17, 11:18, 12:10, 14:12, 15:12, 16:7, 18:9,

19:6, 19:8, 20:25
**two-and-a-half** [2] - 11:17, 11:18
**type** [2] - 8:8, 11:8

## U

**ultimately** [1] - 4:15
**under** [3] - 12:15, 17:21, 23:8
**under-served** [1] - 12:15
**understood** [1] - 16:4
**unique** [1] - 10:23
**United** [1] - 10:5
**UNITED** [1] - 1:1
**universe** [3] - 4:17, 8:16, 8:17
**unjust** [1] - 11:11
**unless** [1] - 23:7
**up** [5] - 3:13, 8:4, 11:25, 13:21, 13:22
**update** [2] - 9:25, 10:3

## V

**validity** [2] - 3:23, 15:11
**VANCE** [1] - 1:18
**various** [1] - 12:24
**vast** [2] - 3:21, 7:11
**vastly** [1] - 10:25
**venues** [1] - 10:4
**Verizon** [4] - 14:19, 16:7, 16:15, 16:16
**Verrill** [1] - 2:7
**view** [3] - 9:21, 9:23, 17:18
**violations** [1] - 8:8
**voice** [2] - 11:14, 11:17
**VRATIL** [1] - 1:13

## W

**Wagner** [3] - 1:20, 24:2, 24:9
**wait** [1] - 5:17
**ways** [1] - 6:5
**weeks** [2] - 17:21, 18:9
**weigh** [2] - 12:10, 12:17
**West** [1] - 2:9
**whole** [2] - 14:19, 15:13

**Wilkins** [1] - 20:20
**Wilmington** [1] - 2:4
**witnesses** [1] - 9:17
**worst** [1] - 5:14
**worth** [3] - 12:6, 14:1, 14:2

## Y

**year** [2] - 7:9, 22:19
**years** [3] - 14:13, 15:13, 16:7
**young** [2] - 9:11, 14:7
**YOUNG** [15] - 14:8, 15:7, 15:19, 15:22, 16:1, 16:5, 16:7, 17:4, 17:10, 17:18, 18:7, 18:24, 19:8, 19:12, 20:22
**Young** [5] - 2:10, 9:9, 13:19, 14:4, 14:8